**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-3242-WJM

ZARA D. TARPLEY,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION**

---

This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Zara D. Tarpley ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. This decision affirmed a prior order by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

## I.  BACKGROUND

Plaintiff was born on July 13, 1974 and was 29 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 9) at 11, 55.) Plaintiff has a high school education and has prior work experience as "an assembly worker, car hop, cashier and hotel housekeeper but has never worked at the substantial activity level." (R. at 64-65.)

Plaintiff first filed an application for supplemental security income on May 28, 1993. (R. at 10.)  The application was denied on April 24, 1995, based on a finding that Plaintiff could engage in substantial gainful activity.  (*Id.*)  Plaintiff filed another claim on May 23, 1996, but the claim was denied on May 9, 1998, based on a finding that Plaintiff's impairments were not severe.  (*Id.*)  Plaintiff next filed an application for supplemental security income in 2002.  (*Id.*)  The application was dismissed in February 2003, due to abandonment by Plaintiff.  (*Id.*)  Plaintiff next filed an application for supplemental security income on September 10, 2003.  (*Id.*)  The application was denied on August 23, 2005, based on a finding that Plaintiff could engage in substantial gainful activity.  (*Id.*)

This instant application for supplemental security income was filed on February 23, 2006, alleging that Plaintiff was disabled due to lower back pain and wrist pain.  (R. at 55.)  Plaintiff's application was denied and, upon a request for a hearing, her claims were heard by Administrative Law Judge ("ALJ") William Musseman on October 16, 2007. (R. at 58.)  The ALJ found that Plaintiff was not disabled and denied her claim on January 7, 2008.  (R. at 65.)  The Appeals Council remanded the case to the ALJ for re-hearing.  (R. at 10.)  The ALJ held a second hearing on October 14, 2011.  (*Id.*)  Plaintiff and vocational expert Doris J. Shriver testified at the hearing.  (*Id.*)

On November 7, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  (*Id.*)  At step one, the ALJ

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security

2

...

found that Plaintiff had not engaged in substantial gainful activity since February 23, 2006.  (R. at 13.)  At step two, he found that Plaintiff suffered from "disorder of the back and fibromyalgia."  (*Id.*)  The ALJ did not find Plaintiff's pelvic pain, wrist pain, depression, or any other impairment to be a severe impairment.  (*Id.*)  At step three, the ALJ found that Plaintiff's disorder of the back and fibromyalgia, while severe impairments, did not meet any of the impairments or combination of impairments listed in the social security regulations.  (R. at 17.)   The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the RFC to perform "light" work as defined by the regulations, including occasional bending, squatting, kneeling, and climbing, and no over chest level work.  (*Id.*)  Given this RFC, at step four the ALJ found that Plaintiff could perform past relevant work as a cashier and fast food worker.  (R. at 20.)  At step five, the ALJ found that there were significant numbers of jobs in the national economy that Plaintiff could perform.  (R. at 21.)  Specifically, the ALJ found that Plaintiff could work as a retail sales clerk or a fast food worker.  (*Id.*)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits.  (R. at 22.)  The Appeals Council denied Plaintiff's request for review.  (R. at 1.)  Plaintiff then filed this action seeking review of the Commissioner's decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct

---

Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

On appeal, Plaintiff raises four issues: (1) the ALJ erred in finding that Plaintiff is capable of performing past work; (2) the ALJ failed to state the specific RFC on a function-by-function basis; (3) the ALJ did not properly weigh the physicians' medical opinions; and (4) the ALJ did not properly assess Plaintiff's symptoms. (ECF No. 14 at 6-7.) The Court will address each of Plaintiff's arguments in turn.

**A.    Plaintiff's Past Work**

Plaintiff contends that the ALJ erred in his step four conclusion that she is able to return to her past relevant work as a cashier or fast food worker. (ECF No. 14 at 12.) Specifically, Plaintiff notes that although the ALJ found that Plaintiff could perform her past relevant work (R. at 20), the ALJ had previously found that Plaintiff had no past relative work. (R. at 64).

"Past relevant work is work that [a plaintiff has] done within the past 15 years []

4

that was substantial gainful activity . . . ." 20 C.R.F. § 416.960(b)(1). The parties concur that Plaintiff's prior work experience does not reach the level of substantial gainful activity ("SGA"). (ECF Nos. 14 at 13, 15 at 9.) The Court agrees. Plaintiff's earning records demonstrate that Plaintiff did not earn SGA levels in any of her prior employment. (R. at 152-55.) Thus, the ALJ's step four conclusion that Plaintiff could perform past relevant work was error.

However, the Court finds that the ALJ's error was harmless, because the ALJ made an alternative step five finding that Plaintiff is able to perform other jobs. (R. at 21.) *See Schmidt v. Sullivan*, 914 F.2d 117, 119 (7th Cir. 1990) (*cert. denied* 502 U.S. 90 (1991)) (noting ability to affirm on step-five grounds because ALJ had not "put all his eggs in the basket labeled not disabled from doing previous work.").

Accordingly, the ALJ's decision that Plaintiff was able to return to past work was not reversible error.

## B. Articulating a Specific RFC

Plaintiff contends that the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to consider all of Plaintiff's limitations on a function-by-function basis. (ECF No. 14 at 14.)

As a general rule, an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at * 1 (July 2, 1996).

The function-by-function assessment requires the ALJ to separately address:

> [A]n individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately . . . even if the final RFC assessment will combine activities . . . . It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work.

*Id.* at * 5.

The ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 416.967(b) with occasional bending, squatting, kneeling, and climbing and no over chest level work." (R. at 17.) Although the final RFC determination only referred to "light work," the subsequent analysis discussed in detail the various medical reports relating to Plaintiff's ability to perform all seven strength demands.

A review of the record shows that the ALJ found Plaintiff could "occasionally lift/carry 20 pounds and frequently life/carry 10 pounds. She could sit for six hours of an eight hour day and stand/walk for six hours of an eight hour day." (R. at 20.) The medical evidence also shows that Plaintiff had no limitations with pushing and/or pulling. (R. at 280.) Thus, the Court finds that the ALJ's RFC in conjunction with the analysis that follows satisfies SSR 96-8. *See Ren v. Astrue*, 2009 WL 3497785, at *6 (D. Colo. Oct. 29, 2009) (finding that SSR 96-8p was satisfied when the ALJ analyzed the plaintiff's ability to perform all seven strength functions in the section immediately following the RFC).

Moreover, even if the ALJ erred by failing to assess Plaintiff's abilities on a function-by-function basis, in light of the rest of the articulated RFC, his analysis, and the review of the record, "that error is merely a technical error minor enough not to

undermine confidence in the determination of the case." *Gomez v. Astrue*, 2013 WL 627154, at *9 (D. Colo. Feb. 20, 2013) (internal citation omitted).

Thus, the Court rejects Plaintiff's argument that the ALJ committed reversible error by failing to discuss Plaintiff's limitations on a function-by-function basis.

**C.     Weighing of Medical Opinions**

Plaintiff contends that the ALJ erred in giving more weight to Plaintiff's non-examining physicians' opinions than he did to the examining and treating physicians' opinions. (ECF No. 14 at 36-56.) "An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d). *See id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted).

The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins* , 350 F.3d at 1301(quotation marks and brackets omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons

for doing so." *Id.* (internal citation omitted); *see* 20 C.F.R. § 404.1527(d)(2); Soc. Sec. Ruling (SSR) 96–2p, 1996 WL 374188, at *4.

The Court will discuss the ALJ's weighing of Plaintiff's treating and nontreating physicians' opinions in turn below.

1. Weight of Treating Doctors' Medical Opinions

The ALJ gave no weight to certain opinions of Drs. Smith and Koons, Plaintiff's treating physicians. (R. at 13-17.) Plaintiff argues that her treating doctors' opinions were entitled to deference, and the ALJ improperly disregarded them entirely. (ECF No. 14 at 42-47.)

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing SSR 99-2p, 1996 WL 374188 (July 2, 1996)).

A finding that a treating doctor's opinion does not meet the test for controlling

weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96–2p, 1996 WL 374188 (July 2, 1996). If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

        a.    *Dr. Smith*

The ALJ reviewed Dr. Smith's 2005 and 2008 opinions regarding the pain Plaintiff allegedly suffers as a result of her fibromyalgia. (R. at 13, 15.) The ALJ noted that Dr. Smith had been Plaintiff's treating physician since 2004. (R. at 13.)

The ALJ not only found that Dr. Smith's opinions did not control[2]; he gave them no weight at all. (R. at 13, 15.) With regards to the 2005 records, the ALJ found that "[t]he records . . . show the claimant presented with complaints of pain, but there are no supportive objective findings." (R. at 13.) The lack of clinical and laboratory tests supporting a claimant's pain is a valid basis for discounting a medical opinion. *See Maiorano v. Astrue*, 930 F. Supp. 2d 1240, 1245 (D. Colo. 2013). The ALJ also noted that "Dr. Smith stated the claimant had been disabled by chronic pain since before 2001, *four years prior to his first treatment records for the claimant.*" (R. at 13) (emphasis in original). Since Dr. Smith "did not provide any documentation in support of this statement [or] indicate what specific limitations would prevent the claimant from working[,]" the ALJ gave no weight to Dr. Smith's opinion. (*Id.*) Dr. Smith's opinions

---

[2] The Court finds that the ALJ did not give Dr. Smith's opinions controlling weight for the same reason he gave them no weight. *See Watkins*, 350 F.3d at 1300 (explaining that a treating physician's opinion that is inconsistent with record evidence is not entitled to controlling weight).

regarding Plaintiff's medical conditions prior to the time he was treating her are not entitled to weight. Moreover, whether a claimant is disabled is a determination reserved to the Commissioner. *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) (explaining that the ultimate question of disability is an issue reserved to the Commissioner); 20 C.F.R. § 404.1527(a)(2). Thus, the ALJ did not err in giving these opinions no weight.

Similarly, regarding the 2008 records, Dr. Smith completed a functional assessment form, stating that Plaintiff's depression would interfere with employment. (R. at 289-91). The ALJ gave no weight to this form, finding that it was "not supported by the records in evidence as a whole and [] not even supported by Dr. Smith's own clinical records." (R. at 15.) The evidence shows that Plaintiff denied feelings of worthlessness and rated her depression a 2 or 3 on a scale of 1-10. (R. at 316, 338, 341.) Additionally, other than the functional assessment form, Dr. Smith's notes do not show that he was treating Plaintiff for depression. (*See* R. at 219-22, 287-88.) Inconsistencies with the record is a valid basis for discounting a medical opinion. *See Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012).

On this record, the Court finds that the ALJ applied the correct legal standard and considered most of the factors required by the regulations, including that Dr. Smith had been Plaintiff's treating physician since 2004, that there were inconsistencies between Dr. Smith's opinions and his own clinical records and the record as a whole, and Dr. Smith's conclusory opinion that Plaintiff had been in chronic pain since 2001. *See* 20 C.F.R. §§ 404.1527, 416.927.

      b.    *Dr. Koons*

The ALJ reviewed the medical opinions of Dr. Koons, Plaintiff's treating pain management physician since 2005. (R. at 13-16.)  In 2008, Dr. Koons completed a Med-9 form stating that Plaintiff was unable to work due to back and pelvic pain.  (R. at 14-15.)  On the same form, however, Dr. Koons stated that Plaintiff was a good candidate for vocational training.  (*Id.*)

The ALJ not only found that Dr. Koons' opinion on the Med-9 form did not control[3]; he gave it no weight at all.[4]  (R. at 14-15.)  Dr. Koons' other medical records show that Plaintiff remained active with her children and family (R. at 342, 358), and that she had full range of motion of her spine and full flexion and extension of her lower extremities with full range of motion.  (R. at 359.)  Further, other record evidence shows that Plaintiff was able to do household chores and go to the store.  (R. at 259.)  Based on this evidence, the ALJ found that Dr. Koons' opinion was entitled to "no weight" "as the findings appear to be contradictory, no specific work limitations were given, and Dr. Koons' opinion that the claimant was disabled [was] not supported by his own records or the other records in evidence." (R. at 14-15.)  The fact that opinions are not supported by the record is a valid basis for discounting a medical opinion.  *See Mounts*, 479 F. App'x at 866.

On this record, the Court finds that the ALJ applied the correct legal standard and

---

[3] The Court finds that the ALJ did not give Dr. Koons' opinion controlling weight for the same reason he gave it no weight.  *See Watkins*, 350 F.3d at 1300 (explaining that a treating physician's opinion that is inconsistent with record evidence is not entitled to controlling weight).

[4] This is the only opinion by Dr. Koons that the ALJ determined was entitled to no weight. (R. at 13-15.)

considered most of the factors required by the regulations, including that Dr. Koons had been Plaintiff's treating pain management physician since 2005, that there was a contradiction between Dr. Koons' opinion and his own clinical records, and that there were inconsistencies with other record evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927.

        2.       <u>Weight of Nontreating Doctors' Medical Opinions</u>

Since the ALJ determined that the both Drs. Smith and Koons' opinions were inconsistent with the medical evidence (R. at 13-15), the ALJ had to examine the nontreating physicians' reports to see if they outweighed Drs. Smith and Koons' reports. *See Hamlin*, 365 F.3d at 1215 ("[W]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report. . . ."). "When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical opinions." *Retana v. Astrue*, 2012 WL 1079229, at *4  (D. Colo. Mar. 30, 2012). "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 416.927(f)(2)(ii)).

The ALJ reviewed the medical opinion of Dr. Vega, an examining psychiatrist, and gave it no weight.  (R. at 16.)  He also reviewed the reports of Drs. Happer and Ziomek, two nonexamining physicians, and gave their opinions significant weight.  (R. at 20.)  The Court will turn to each of these medical opinions in turn.

        a.       *Dr. Vega*

The ALJ reviewed the medical opinion of Dr. Vega, an examining (but non-treating) psychiatrist, and gave it no weight.  (R. at 16.)  The ALJ noted that "based

entirely on the statements made by [Plaintiff] during this one time only meeting, Dr. Vega diagnosed major depression, pain disorder with psychological and medical elements, chronic pain, hyperthyroidism, and menopausal symptoms and gave her global assessment of functioning of 55 to 60." (R. at 16.)  Additionally, although this global assessment indicated "*moderate* symptoms or *moderate* difficulty in social or occupational functioning[,] Dr. Vega concluded that Plaintiff would have difficulty in meeting demands of competitive employment due to severe depression and chronic pain." (*Id.*) (emphasis in original.)

The ALJ found that Dr. Vega's opinion was an "unsupported and contradictory assessment based entirely on statements made by the claimant."[5] (*Id.*)  A review of the assessment shows that Dr. Vega's report does not contain supportive objective findings. (R. at 369.)  For instance, Dr. Vega's opinion is partially based on Plaintiff's statement that she was previously hospitalized at St. Mary Corwin Hospital, a psychiatric hospital. (*Id.*)  However, the report does not include evidence showing that this was true. (*Id.*) Indeed, no records showing that Plaintiff was ever hospitalized at St. Mary Corwin Hospital have been found. (R. at 252, 276.)

As explanation for his assignment of "no weight" to Dr. Vega's opinion, the ALJ noted that Dr. Vega was not a treating physician; rather, he was an examining psychologist who had met with Plaintiff only once in order to provide a mental residual functional exam. (R. at 16.)  The ALJ's statements indicate that the he considered the

---

[5] The ALJ also noted that since Dr. Vega did not perform a physical examination, he was unqualified to assess Plaintiff's physical problems. (R. at 16.)  This assessment is not error. *See Miller v. Astrue*, 2012 WL 4076128, at *6 (10th Cir. Sept. 18, 2012) (finding psychologist not qualified to render opinion about a physical impairment).

factors required by the regulations, including Dr. Vega's specialty, his treating history, and the contradiction between Dr. Vega's opinion and his own clinical records. *See* 20 C.F.R. §§ 404.1527, 416.927. Thus, the Court finds that the ALJ applied the correct legal standard in weighing Dr. Vega's opinion.

        b.     *Dr. Happer*

The ALJ gave significant weight to the medical opinion of Dr. Happer, a State agency physician who completed an RFC assessment. (R. at 20.) Dr. Happer found Plaintiff could "occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds[, s]he could sit for six hours of an eight hour day and stand/walk for six hours of an eight hour day." (*Id.*)

Dr. Happer's opinion is consistent with substantial record evidence showing that Plaintiff's gait was normal (R. at 359), she had "no percussible lumbar spine tenderness" (R. at 260), she had full range of motion of her right wrist (R. at. 260), and X-ray results of her wrist showed that her "bones, joints and soft tissues were all normal." (R. at 228.)

On this record, the Court finds that the ALJ applied the correct legal standard and considered most of the factors required by the regulations, including Dr. Happer's examining relationship, and how his opinion is consistent with and supported by the record evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. Further, as there is sufficient evidence in the medical records to support Dr. Happer's opinion, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place. *See Salazar*, 468 F.3d at 621.

   c. *Dr. Ziomek*

The ALJ gave significant weight to the opinion of Dr. Ziomek, a State agency physician who "completed an assessment of [Plaintiff] to ascertain whether or not [Plaintiff's] mental impairment(s) met the requirements for a Listing Level impairment." (R. at 20.)  Dr. Ziomek "assessed mild restrictions in [Plaintiff's] activities of daily living; no restrictions in the ability to maintain social functioning; and mild limitations maintaining concentration, persistence, or pace." (*Id.*)  The ALJ noted that the "assessment was based on the records showing [that] at various times [Plaintiff] both denied and alleged being depressed." (*Id.*)

The ALJ noted that Dr. Ziomek was a State agency physician and that the RFC assessment was "well supported by the evidence of record[.]" (*Id.*)   The evidence shows that Plaintiff rated her depression a 2 or 3 on a scale of 1-10 (R. at 337, 338, 341), she had previously denied feelings of worthlessness  (R. 316), and that she socialized with friends.  (R. at 338.)

The ALJ's statements indicate that the ALJ considered the factors required by the regulations, including Dr. Ziomek's status as a State agency physician, and his opinion's consistency with the record evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927. Further, as there is sufficient evidence in the medical records to support Dr. Ziomek's opinion, the Court must defer to the ALJ's evaluation of the evidence and may not reweigh it in his place.  *See Salazar*, 468 F.3d at 621.  Thus, the Court finds that the ALJ applied the correct legal standard in weighing Dr. Ziomek's opinion.

 3. <u>Conclusion</u>

The Court finds that the ALJ applied the correct legal standards when evaluating

the medical opinions in this case. Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of the physicians' opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record. See Lax, 489 F.3d at 1084. Therefore, the Court finds no error in the ALJ's weighing of the physicians' medical opinions.

**E.     Credibility of Plaintiff's Testimony**

Plaintiff argues that the ALJ improperly weighed the credibility and significance of her testimony in disregarding her subjective complaints regarding her symptoms, and that the ALJ failed to quantify the extent that Plaintiff's testimony was inconsistent with the evidence. (ECF No. 14 at 21-22.)

With respect to Plaintiff's testimony at the hearing, the ALJ stated that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the evidence of record." (R. at 18.) The ALJ then went on to review the medical evidence and opinions. (Id. at 18-20.)

Plaintiff cites Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995), for the proposition that the ALJ must cite the specific relevant evidence he relies upon in regard to the credibility of a plaintiff's testimony. (ECF No. 14 at 23.) The Court notes that Kepler has not been interpreted to require a formalistic factor-by-factor recitation of the evidence. See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). As set forth

below, the Court finds that the ALJ's decision in this case satisfies *Kepler*.[6]

1.   Wrist and Back Pain

The ALJ found that Plaintiff's statement that her pain worsened by being touched (R. at 211), was not supported by the evidence showing that Plaintiff only had tender points "present only over the sacroiliac joints and the lower lumbar facet joints." (R. at 18, 242.) Further, Dr. Happer opined that Plaintiff's claim of worsening pain upon touching was not credible because it was "not consistent with [Dr. Duffee's August 2006 Consultative Examination Report] that showed no such tenderness." (R. at 284 (citing R. at 260) ("There is no percussible lumbar spine tenderness."))

The ALJ found that Plaintiff's testimony regarding bilateral wrist pain[7] (R. at 49-50), was not supported by X-ray evidence showing that her "bones, joints and soft tissues were all normal." (R. at 18, 228, 284.) The ALJ's finding correctly references evidence in the record.

2.   Limitations in Walking and Standing

The ALJ found that Plaintiff's testimony stating she was only able to walk "about a block" (R. at 49), was not consistent with the evidence showing that Plaintiff was able

---

[6] The Court has already found that substantial evidence in the record supports the ALJ's weighing of the medical opinions and, therefore, the RFC the ALJ fashioned. Because there is no evidence that the ALJ's RFC would have been any different if the ALJ had fully credited Plaintiff's testimony, the Court finds that any error in the ALJ's assessment of Plaintiff's credibility was harmless. *See Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (applying harmless error in a Social Security case where error was technical and substantial evidence supported the outcome). Therefore, the Court finds that any error associated with the ALJ's credibility finding with respect to Plaintiff's testimony does not mandate reversal of the ALJ's denial of benefits.

[7] The Court notes that although Plaintiff also complained of left wrist pain that began when handcuffs were removed on August 31, 2008, Plaintiff is not claiming disability based on that pain. (R. at 15, 309.)

to "ambulate effectively" and shop for groceries or clothes. (R. at 18, 184, 259, 284.)

The ALJ also found that Plaintiff's testimony stating she was limited in standing and walking to 15 or 20 minutes at a time (R. at 34), was inconsistent with her admission that she was able to shop one or two hours at a time, her ability to care for her own needs and the needs of her children, and her ability to socialize with friends. (R. at 18, 184, 259, 276.) The ALJ found that Plaintiff's allegations of the severity of these limitations (R. at 33-34), was further undermined by evidence showing that Plaintiff reported to Dr. Koons that her medications enabled her to stay active with her friends and family. (R. at 19, 342.)

3.  Depression

The ALJ found that Plaintiff's credibility regarding her allegations of depression was undermined by the absence of medical records from St. Mary Corwin Hospital. (R. at 18.) There is no dispute that the medical records have not been found. (R. at 252, 276.)

The ALJ also found that Plaintiff's testimony regarding feelings of worthlessness was inconsistent with evidence showing that her depression was minimal – she rated it a 2 on a scale of 1-10 (R. at 19, 341), and that Plaintiff had previously denied feelings of worthlessness. (R. at 19, 316.)

Accordingly, the Court finds that the ALJ applied the correct legal standards and his conclusions were supported by substantial evidence in the record.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits. The Clerk shall close this case and enter judgment in favor of Defendant.

Dated this 31st day of January, 2014.

BY THE COURT:

William J. Martinez
United States District Judge